## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| XIAOMI CORPORATION, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 21-280 (RC) |
| | : | | |
| v. | : | Re Document No.: | 14, 18 |
| | : | | |
| DEPARTMENT OF DEFENSE, *et al.,* | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' motion for a preliminary injunction. Plaintiffs, Xiaomi Corporation ("Xiaomi") and individual Xiaomi shareholders Bin Lin, Peng Lin, and Stephen Sean English (collectively, "Plaintiffs") seek an order enjoining the Department of Defense from enforcing its designation of Xiaomi as a Communist Chinese military company ("CCMC") pursuant to Section 1237 of the National Defense Authorization Act for Fiscal Year 1999 ("NDAA FY99"), Pub. L. 105-261, 112 Stat. 2160 (Oct. 17, 1998) (as amended) ("Section 1237"). Such designation forbids all U.S. persons from purchasing or otherwise possessing Xiaomi's publicly traded securities or any derivatives of said securities. Without preliminary injunctive relief, these restrictions will begin to go into effect on March 15, 2021 at 9:30 am. The Court finds that the issuance of a preliminary injunction here is an appropriate exercise of its discretion, given that Plaintiffs have shown both a high likelihood of success on the merits on their Administrative Procedure Act ("APA") claims and that, absent relief, they will suffer irreparable harm in the form of serious reputational and unrecoverable economic injuries.

Accordingly, for the reasons detailed below, Plaintiffs' motion for preliminary injunction is granted.

## II.  BACKGROUND

### A.  Statutory Background: Section 1237

This suit concerns Xiaomi's designation as a CCMC under Section 1237 of the National Defense Authorization Act for Fiscal Year 1999, as amended.  Pursuant to this provision, the President is authorized to exercise International Emergency Economic Powers Authority ("IEEPA") against [CCMCs].[1]  *See* NDAA FY99, § 1237(a)(b).  Section 1237, in turn, defines a CCMC as any person who "is owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China or that is owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China."  NDAA FY99 § 1237(b)(4)(B)(i). The statute further defines the People's Liberation Army ("PLA") as "the land, naval, and air military services, the police, and the intelligence services of the Communist Government of the People's Republic of China, and any member of any such service or of such police."  *Id.* § 1237(c).

Section 1237 directs the Secretary of Defense, with the input of the Attorney General, the Director of the Federal Bureau of Investigation, and the Director of Central Intelligence, to identify "[CCMCs] that operate directly or indirectly in the United States or any of its territories or possessions."  *Id.* §1237(b).  This list is to be published in the Federal Register, and also provided to the Committee on Armed Services of the U.S. House of Representatives, the

---

[1] Pursuant to IEEPA, in cases of national emergency, the President is authorized to, *inter alia*, "direct and compel, nullify, void, prevent or prohibit, any . . . transfer . . . of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest . . . with respect to any property, subject to the jurisdiction of the United States . . . ."  50 U.S.C. § 1702(a)(1)(B).

Committee on Armed Services of the U.S. Senate, the Secretary of State, the Secretary of the Treasury, the Attorney General, the Secretary of Commerce, the Secretary of Energy, and the Director of the Central Intelligence Agency. *Id.*

While originally enacted with the directive to update the list annually, the Department of Defense published its first list of designated CCMCs on June 24, 2020, designating twenty companies as falling within this category. Fifteen additional companies would receive this designation by the end of the 2020 year. On January 14, 2021, the Department of Defense made its most recent listing of designated CCMC companies, a list which included Plaintiff Xiaomi.

## B. Factual and Procedural Background

### 1. Xiaomi Corporation

Xiaomi is a multinational consumer electronics corporation that is headquartered in China and incorporated in the Cayman Islands. Am. Compl. ¶ 15, ECF No. 9. The corporation is the third-largest smartphone manufacturer in the world by volume, and "provides consumer electronic products for civilian and commercial use, including smartphones, televisions, and laptops." *Id.*; Decl. of Bin Lin ("Bin Lin Decl.") ¶ 5, ECF No. 14-2. Xiaomi is publicly traded on the Hong Kong Stock Exchange, and it is widely held, with more than half of the company's shares owned by investors who own one percent or less of the company. Bin Lin Decl. ¶¶ 16, 21. The company has a significant presence in the United States, with two U.S. subsidiaries, an office in California, and over $300 million in revenue generated in the United States in the past five years. *Id.* ¶ 11.

Xiaomi is effectively controlled by two of the company's cofounders, Lei Jun and Plaintiff Bin Lin, who together own three-quarters of the company's voting rights. Bin Lin. Decl. ¶ 14. The company is also overseen by a board of seven directors. *Id.* ¶ 18.

2.  Xiaomi's Designation as a CCMC

On November 12, 2020, then-President Trump issued Exec. Order No. 13959, *Addressing the Threat from Securities Investments that Finance Communist Chinese Military Companies,* (Nov. 12, 2020) ("E.O. 13959").  The President declared a national emergency under IEEPA due to the security threat posed by "civilian Chinese companies" that support the People's Republic of China's ("PRC") military and intelligence activities.  *Id*.  The order described that through a "national strategy of Military-Civil Fusions," the PRC compels civilian Chinese companies to support its military and intelligence activities, and these companies in turn "raise capital by selling securities to United States investors . . . exploit[ing] United States investors to finance the development and modernization of [the PRC's] military."  *Id.*  The President concluded that these actions "allow the PRC to directly threaten the United States homeland and United States forces overseas, including by developing and deploying weapons of mass destruction, advanced conventional weapons, and malicious cyber-enabled actions against the United States and its people."  *Id.*

As a result, E.O. 13959 prohibited all United States persons from engaging in select investment activities with any CCMC, including a blanket prohibition on any "transaction in publicly traded securities, or any securities that are derivative of, or are designated to provide investment exposure to such securities of any [CCMC]."  *Id.* § 1(a).  The order was later updated to expressly require all United States persons to fully divest of any securities of a CCMC within 365 days of a company's designation as a CCMC.  Exec. Order No. 13974, *Amending Executive Order 13959—Addressing the Threat from Securities Investments that Finance Communist Chinese Military Companies* (Jan. 13, 2021).  For the purposes of the order and resulting restrictions, a CCMC was defined as "any person that the Secretary of Defense, in consultation

with the Secretary of the Treasury, publicly lists as a Communist Chinese military company meeting the criteria in section 1237(b)(4)(B) . . . and that operates directly or indirectly in the United States or any of its possessions." *Id.* § 2.

On January 14, 2021, the Department of Defense submitted to Congress, pursuant to Section 1237, a list of designated CCMC companies that included Xiaomi. *See Qualifying Entities Prepared in Response to Section 1237 of the National Defense Authorization Act for Fiscal Year 1999* (PUBLIC LAW 105-261). At the time, no explanation for the designation was provided. In the course of this litigation, Defendants have since supplied the decision document relied upon by the Department of Defense in making the CCMC designation decision for Xiaomi. *See* Exhibit A to Decl. of Andrew J. Pahutski ("DoD Memo"), ECF No. 16-1. The short, two-page document shows that the Department of Defense based Xiaomi's CCMC designation on two factual grounds. First, the document notes that Lei Jun, Xiaomi's CEO, had been recognized as an "Outstanding Builder[] of Socialism with Chinese Characteristics," by the PRC's Ministry of Industry and Information Technology, an organization that purportedly "helps manage military-civil fusion for the state." *Id.* at 1. Second, the document describes Xiaomi's five-year plan to invest in 5th generation telecommunication capabilities ("5G") and Artificial Intelligence ("AI"), both "[c]ritical [t]echnologies essential to modern military operations," according to the 2019 DoD Industrial Capabilities Report. *Id.* The decision memo concludes by stating perfunctorily that "Xiaomi meets the criteria" for CCMC classification. *Id*. at 1.

### 3. Procedural History

On January 29, 2021, Plaintiffs filed this lawsuit, *see* Compl., ECF No. 1, amending the complaint shortly thereafter to add the individual Plaintiffs and President in his official capacity, Am. Compl. The Amended Complaint challenges the CCMC designation of Xiaomi on five

grounds, asserting the government's actions violate the APA (Count I-II), exceed the Department of Defense's authority under Section 1237 (Count III-IV), and constitute a deprivation of a property and liberty interest without due process in violation of the Fifth Amendment (Count V). *See* Am. Compl.

On February 17, 2021, Plaintiffs filed their motion for emergency injunctive relief, arguing that Xiaomi was incorrectly designated as a CCMC and seeking a preliminary injunction against enforcement of the restrictions. *See* Pls.' Mem. Supp. Mot. Prelim. Inj. ("Pls.' Mot."), ECF No. 14-1. Defendants have opposed the motion, *see* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Defs.' Opp'n"), ECF No. 16, and Plaintiffs have filed a reply, *see* Reply Mem. Supp. Pls.' Mot. Prelim. Inj. ("Pls.' Reply"), ECF No. 19.[2] The Court heard oral argument on March 9, 2021 to consider the parties' positions. Plaintiffs' motion is accordingly fully briefed and now ripe for decision.

### III.  LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (alteration in original) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his

---

[2] In support of their Reply, Plaintiffs have filed an Unopposed Motion for Leave to File Supplemental Declaration, ECF No. 18. The Supplemental Declaration of Bin Lin ("Bin Lin Supp. Decl."), ECF No. 18-1, provides additional information to the Court regarding the two factual bases used by the Department of Defense to justify the designation of Xiaomi as a CCMC and describes the additional harms that have accrued to Plaintiffs since the filing of their opening brief as a result of the designation. The Court grants Plaintiffs' motion for leave to file the supplemental declaration and will consider its contents herein.

favor, and [(4)] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  When "the Government is the opposing party," the determination of the third and fourth factors regarding "harm to the opposing party" and "the public interest" merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial, and a court "may deny a motion for preliminary injunction, without further inquiry, upon finding that a plaintiff is unable to show <u>either</u> irreparable injury or a likelihood of success on the merits." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (emphasis in original).  Even if the movant can make an independent showing of the first two factors, relief does not issue automatically.  Rather, as the third and fourth factors suggest, a preliminary injunction is an equitable remedy committed to the court's "sound discretion." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

## IV.  ANALYSIS

### A.  Likelihood of Success on the Merits

The Court begins with the "most important factor" in the preliminary injunction analysis, a consideration of whether Plaintiffs have demonstrated a "likelihood of success on the merits." *Aamer v. Obama,* 742 F.3d 1023, 1038 (D.C. Cir. 2014).  Because Plaintiffs have shown that Xiaomi's CCMC designation was likely made in violation of the APA in that it was arbitrary and capricious, and in excess of the authority granted under Section 1237, the Court finds that the first preliminary injunction factor weighs in favor of relief.

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right," *id.* § 706(2)(C).  In cases such as this one that involve

national security, courts are to afford heightened deference to an agency's determination.  *See*

*Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007); *see also Holy Land*

*Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 84 (D.D.C. 2002) (noting that sanction

determinations "are an important component of U.S. foreign policy, and . . . entitled to particular

deference."), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003).  However, even in this context, "courts retain

a role, and an important one, in ensuring that agencies have engaged in reasoned

decisionmaking."  *Judulang v. Holder*, 565 U.S. 42, 53 (2011).

Reasoned decision-making requires that an agency "articulate a satisfactory explanation

for its action" with a "rational connection between the facts found and the choice made."  *Motor*

*Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)

(quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  For "record-based

factual conclusion[s]" an agency makes a reasoned decision when the agency's final

determination "is supported by substantial evidence."  *Dickinson v. Zurko*, 527 U.S. 150, 164

(1999).  Conversely, when an agency "offer[s] an explanation for its decision that runs counter to

the evidence before the agency, or is so implausible that it could not be ascribed to a difference

in view or the product of agency expertise," courts must cast the action aside as arbitrary and

capricious.  *Id.*

Plaintiffs argue that the Defense Department's decision to designate Xiaomi as a CCMC

runs afoul of the APA in a number of ways.  First, they contend that the Defendants' proffered

explanation for the designation is "inadequate" and consequently cannot fulfill the APA

requirement that an agency "articulate a satisfactory explanation for its action."  Pls.' Reply at

10–11.  Second, they assert that Xiaomi fails to meet the Section 1237 statutory criteria for the

CCMC classification, and thus the designation was made "in excess of the agency's authority." *Id.* at 12.  Third, Plaintiffs claim that Xiaomi's designation decision lacks the required "substantial evidence" necessary under the APA for an agency to arrive at a factual conclusion. *Id*. at 16.  For the reasons discussed below, the Court agrees with Plaintiffs on all three counts, and concludes that they have more than met their burden of showing a likelihood of success on the merits on their APA claims.

 1.  The Department of Defense's Explanation for Designating Xiaomi as a CCMC is Inadequate

Plaintiffs begin by arguing that the Defendants' decision to designate Xiaomi as a CCMC is arbitrary and capricious because the DoD Memo fails to "articulate a satisfactory explanation for [Defendants'] action[s]."  Pls.' Reply at 11 (citing *State Farm*, 463 U.S. at 43).  The Court agrees that the Department of Defense's two-page decision memo suffers from a number of explanatory deficits, and thus cannot pass this Court's APA review.

The DoD Memo begins on a shaky ground.  It does not explicitly identify the agency's source of authority (*i.e.*, Section 1237) that governs the CCMC designation process, and when the memo does invoke the relevant statutory language from Section 1237, the excerpted language is quoted incorrectly.[3]  These errors do not inspire confidence in the fastidiousness of the agency's decision-making process.  *See Poett v. United States*, 657 F. Supp. 2d 230, 236–37 (D.D.C. 2009) (finding an agency determination to suffer from "key flaws" when it "misquot[ed]" the statute at issue and applied "an incorrect definition" of a statutory term).

_____

[3] The DoD Memo states that to be designated as a CCMC, an "entity must be owned, controlled, or affiliated with the People's Liberation Army (PLA), government ministries [sic] People's Republic of China (PRC), *or affiliated with the PRC defense industrial base*." DoD Memo at 1 (emphasis added).  In actuality, Section 1237 defines a CCMC as a person that "(i) is owned or controlled by, or affiliated with, the [PLA] or a ministry of the government of the [PRC] *or that is owned or controlled by an entity affiliated with* the defense industrial base of the [PRC]." NDAA FY99 § 1237(b)(4)(B) (emphasis added).

But even excusing these deficiencies as minor clerical errors, other fundamental problems remain with the Defendants' proffered explanation, and thus, their overall decision-making process.  The DoD Memo analysis consists of the following: a recitation of the (misquoted) CCMC criteria, a citation to two facts pulled from Xiaomi's Annual Report, and then the blanket conclusion that "Xiaomi meets the [CCMC] criteria."  DoD Memo at 1.  This analysis (or lack thereof) skips the most "critical step" of an agency "connecting the facts to the conclusion." *Dickson*, 68 F.3d at 1405; *see also State Farm*, 463 U.S. at 43 (noting that an agency explanation must, at minimum, provide a "rational connection between the facts found and the choice made.").  This required rational connection—or any connection—is lacking here.  Because the Department of Defense has done little more than "parrot[] the language of a statute," *Dickson*, 68 F.3d at 1405, followed by a conclusory statement, it has not adequately explained the basis for its decision.  *See Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("[C]onclusory statements will not do; 'an agency's statement must be one of reasoning.'") (citing *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (internal quotation marks omitted)).  Consequently, this is the type of case where, because Defendants have "failed to state [their] reasoning . . . [the Court] can declare with confidence that the agency action was arbitrary and capricious."  *Select Specialty Hosp.–Bloomington, Inc. v. Burwell*, 757 F.3d 308, 312 (D.C. Cir. 2014) (citation omitted).

2. Xiaomi Does Not Meet the Statutory Criteria to be Designated a CCMC Under Section 1237

Defendants' APA compliance issues do not stop there.  Plaintiffs contend that the CCMC designation is also unlawful under the APA because Xiaomi "does not meet the statutory criteria to be designated a CCMC under Section 1237."  Pls.' Reply at 12.  The Court agrees, and finds

that Xiaomi's CCMC designation was made in violation of the Department of Defense's limited grant of statutory authority under Section 1237.

Under the APA, a reviewing court is empowered to "set aside" an agency action that exceeds its statutory "authority" or "limitations." 5 U.S.C. § 706(2).  The relevant statutory limitation here is the statutory criteria drafted by Congress that the Department of Defense must follow when designating entities as a CCMC.  Section 1237 defines the CCMC criteria to encompass any person that:

> (i) is owned or controlled by, or affiliated with, the [PLA] or a ministry of the government of the [PRC] or that is owned or controlled by an entity affiliated with the defense industrial base of the [PRC]; and (ii) is engaged in providing commercial services, manufacturing, producing, or exporting.

> NDAA FY99 § 1237(b)(4)(B).

Defendants do not dispute that Xiaomi is not "owned or controlled" by any of the proscribed Chinese entities delineated in Section 1237.[4]  Instead, Defendants argue that Xiaomi was designated as a CCMC because it is "affiliated with the Chinese military and defense establishment."  Defs.' Opp'n at 12, 16–17.  In support of this point, they cite to two dictionary definitions of "affiliated" to contend that Xiaomi could be "affiliated with" one of the prohibited persons under Section 1237 if it is found to have a "common purpose," "shared characteristics," or if it is "closely associated with another typically in a dependent or subordinate position."  *Id.*

---

[4] The Court agrees that Xiaomi is plainly not "owned or controlled" by any of the Section 1237 entities.  It is debatable if any one person "owns" the company, given that Xiaomi is a large, publicly traded corporation of which the largest shareholder, Lei Jun, owns only 30% of the total ordinary shares.  Bin Lin Decl. ¶ 17.  Regarding "control" of Xiaomi, its Board of Directors, subject to the direction of its controlling shareholders, Lei Jun and Bin Lin, "control" the company.  *Id.* ¶¶ 19, 22.  The limited record before the Court indicates that Lei Jun and Bin Lin are businesspeople and not members of any military force, security service, or the PRC government itself.  *Id*. ¶ 22.  Given these facts, Defendants wisely do not argue that the PLA or a PRC ministry "own or control" Xiaomi.

at 16 (citing definitions from Oxford English Dictionary and Merriam Webster).  Putting aside

the question of if Xiaomi could fall within even this broad definition of "affiliated," the Court is

convinced that the competing definition put forth by Plaintiffs is the better reading of the term.

In refuting Defendants' definition, Plaintiffs counter that the "plain and common meaning

of 'affiliated with' is . . . a company effectively controlled by another or associated with others

under common ownership or control.'" Pls.' Reply at 13 (citing *Mey v. DIRECTV, LLC*, 971

F.3d 284, 289 (4th Cir. 2020) (quoting Webster's Third New Int'l Dictionary 35 (2002)).  The

overwhelming weight of authority supports this definition over Defendants' broad formulation.

For example, the Department of Defense's own regulations use a definition substantially similar

to Plaintiff's definition.  *See*, *e.g.*, 32 C.F.R. § 232.3 (Defense regulation stating that an

"affiliate" is "any person that controls, is controlled by, or is under common control with another

person"); 32 C.F.R. § 117.3 (Defense regulation stating that an "affiliate" is an "entity that

directly or indirectly controls, is directly or indirectly controlled by, or is under common control

with, the ultimate parent entity").  The Department of Justice's Office of Legal Counsel does as

well.  *See, e.g.*, *Excl. Religiously Aff. Sch. Charter-Sch. Grant Prgm.,* 2020 WL 7319331, at *2

(O.L.C. Feb. 18, 2020) ("Generally speaking, one entity is 'affiliated' with another if the two

have a close association, such as when they have formally distinct business operations but are

under common ownership or control.").  Congress has also passed numerous statutes using this

formulation,[5] and this definition has been adopted across the federal courts as the "plain and ordinary meaning" of the term.[6]

In contrast, Defendants' preferred "closely associated" affiliate definition was explicitly rejected by the Eleventh Circuit as "unpersuasive and contradicted by the weight of the authorities," in favor of Plaintiffs' definition.  *See Emory v. Neurocare*, 985 F.3d 1337, 1345 (11th Cir. 2021).  The Court also shares Plaintiffs' concerns that crediting Defendants' definition could imbue Section 1237's use of "affiliate" with "a meaning so broad that it is inconsistent with [the statute's] accompanying words, thus giving 'unintended breadth to the Acts of Congress.'"  *Yates v. U.S.*, 574 U.S. 528, 543 (2015) (citation omitted).  Consequently, the Court will interpret the word "affiliate" in the statute using Plaintiffs' definition of a company effectively controlled by another or associated with others under common ownership or control.

Having determined the proper definition of the term "affiliated," the Court concludes that based on the evidence before it, Xiaomi is not an affiliate of any of the proscribed entities identified by Congress in Section 1237.  Xiaomi is a publicly traded company that produces commercial products for civilian use, is controlled by its independent board and controlling shareholders, and is not effectively controlled or associated with others under the ownership or control of the PRC or its security services.  Accordingly, Xiaomi's classification as a CCMC exceeded the Department of Defense's statutory authority under Section 1237, in violation of the APA.  *See* 5 U.S.C. § 706(2).

---

[5] *See, e.g.*, 12 U.S.C. § 5481 (Dodd-Frank Consumer Protection Act); 21 U.S.C. § 379g (Federal Food, Drug, and Cosmetic Act); 16 U.S.C. § 618 (Federal Timber Contract Payment Modification Act); 47 U.S.C. § 153 (Telecommunications Act); 11 U.S.C. § 101(2)(A) (Bankruptcy Code).

[6] *See., e.g.*, *Texas Molecular Ltd. v. Am. Int'l*, 424 F. App'x 354, 357 (5th Cir. 2011); *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009); *Nat'l Union v. Beelman*, 203 F. Supp. 3d 312, 319–20 (S.D.N.Y. 2016).

3.  The Department of Defense's Designation Determination Lacked "Substantial Evidence"

Lastly, and perhaps unsurprisingly given the other errors in the decision process already noted, the Court finds that the Department of Defense did not rest its determination that Xiaomi was a CCMC on substantial evidence as required under the APA.  When an agency action is "bound up with a record-based factual conclusion" the reviewing court is tasked with determining if the agency's conclusion is supported by "substantial evidence." *Dickinson*, 527 U.S. at 164.  In applying this standard, the reviewing court cannot "displace . . . [a] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  Instead, the court must ask, "whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Dickinson,* 527 U.S. at 164 (internal citations omitted).  Even given this deferential standard, the Court finds that reasonable minds would be hard-pressed to accept as adequate the Department of Defense's Xiaomi CCMC determination based on the paltry evidence on which the decision rests.

The Department of Defense relied on just two pieces of evidence to conclude that Xiaomi met Section 1237's statutory criteria and should be classified as a CCMC.  First, they cite to Xiaomi's acknowledgement in its 2019 Annual Report that the company was investing heavily in 5G and AI, two types of technology the Defense Department went on to note are "essential to modern military operations."  DoD Memo at 1.  Second, again relying on Xiaomi's 2019 Annual Report, the DoD Memo mentions that Lei Jun, Xiaomi's founder and CEO, was awarded the title of "Outstanding Builder[] of Socialism with Chinese Characteristics" by the Chinese Ministry of Industry and Information Technology, an "organization of the PRC that helps manage military-civil fusion for the state." *Id.*  Defendants argue that these two data points, considered in light of

14

the PRC's overall Military-Civil Fusions strategy, is "adequate to support DoD's finding that Xiaomi is affiliated with the PLA, government ministries of the [PRC], or . . . the PRC defense industrial base." Defs.' Opp'n at 16.[7]

The Court disagrees, and finds the Department of Defense's designation conclusion to lack the substantial evidentiary support required under the APA. First, these two pieces of evidence must be contextualized. Xiaomi is a consumer electronics company. 5G and AI technologies are quickly becoming industry standard for consumer electronics devices, demonstrated by the fact that Xiaomi's key competitors provide smartphones equipped with 5G and AI features. Bin Lin Supp. Decl ¶ 8. To simply refuse to keep up with the market and develop these technologies would render Xiaomi's products obsolete. *Id.* That 5G and AI technologies have military applications as well cannot be enough to support a conclusion that Xiaomi is a CCMC. Indeed, such an outcome could result in a situation where any Chinese company involved in technology that has alternative military uses could be designated as a CCMC. Moreover, it would appear that even U.S. technology companies with Chinese subsidiaries could be considered CCMCs under this sweeping inference. Needless to say, the Court is troubled by the lack of any limiting principal on the Department of Defense's CCMC designation power if this logic is allowed to stand.

When questioned on this issue at oral argument, counsel for Defendants averred that the two evidentiary facts, when analyzed together, provide an adequate basis to support the Department of Defense's determination. *See* Hr'g. Tr. at 45:16-20; 47:12-24. But the second evidentiary basis for the designation, the award granted to Xiaomi's Chairman and CEO, Lei

---

[7] Defendants' counsel stated at oral argument that while the administrative record is not yet certified, at this time the government does not plan to rely on any additional evidentiary basis to support the CCMC designation made as to Xiaomi. *See* Hr'g. Tr. at 40:16-41:15.

Jun, hardly provides "substantial evidence" (either on its own or when considered in conjunction with Xiaomi's 5G and AI investments) to support the Department of Defense's determination. Plaintiffs have put forth evidence stating that the award in question was granted to private sector entrepreneurs in recognition of contributions to China's economic development.  Bin Lin Supp. Decl. ¶ 5.  Over 500 entrepreneurs have been recipients of the award since 2004, and its honorees have included, along with Lei Jun, the leaders of a Chinese powdered milk and infant formula company, the maker of a well-known chili sauce brand, and a barley wine producer.  *Id.* ¶¶ 5, 7. It seems implausible that these industries would be involved in the military-civil fusion that is of concern here.  The purported link to the Chinese Ministry of Industry and Information Technology is also far more tenuous than the Department of Defense implies.  The award recipients are not selected directly by this ministry, but are instead, as in Lei Jun's case, nominated by a local district and ultimately selected by a committee composed of officials from several different government ministries.  *Id.*

In sum, even considering the two pieces of evidence proffered by the Defense Department together, there is plainly a lack of substantial evidence to adequately support a finding that Xiaomi is a CCMC.

*      *      *

The Department of Defense's CCMC designation process as to Xiaomi was deeply flawed and failed to adhere to several different ADA requirements.  As a result, the Court concludes that Plaintiffs are highly likely to succeed on the merits on their APA claims, fulfilling the first preliminary injunction requirement.[8]

---

[8] Because the Court concludes that Plaintiffs have demonstrated that they are likely to prevail on their APAs claims, it need not reach Plaintiffs' constitutional due process claim at this time in order to determine if preliminary relief is warranted.  However, the Court notes that

## B.  Irreparable Harm

The Court turns next to the question of whether Plaintiffs will face irreparable harm if denied injunctive relief.  To show irreparable harm, the D.C. Circuit requires that the movant demonstrate an injury that is "both certain and great . . . of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm" and that the injury be "beyond remediation."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citations and internal quotations omitted).  The movant must also show that the alleged harm "will directly result from the action which the movant seeks to enjoin."  *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  The Court finds that Plaintiffs have met this standard.

Plaintiffs allege that without this Court's grant of preliminary relief, they will be subjected to a multitude of irreparable harms stemming from the CCMC designation and resulting restrictions.  Pls.' Mot. at 35–41.  These alleged harms include, *inter alia*, "extreme and irreversible damage to Xiaomi's business," as a result of damage to the company's reputation, various forms of unrecoverable monetary losses including a loss of access to capital and other business opportunities, loss of market share, and difficulty recruiting and retaining talent.  *Id.* 35–39.[9]  Defendants would have the Court dismiss these harms as "nothing more than theoretical outcomes," Defs.' Opp'n at 24, and even if credited, assert that they are not so severe as to "threaten[] the very existence of [Xiaomi's] business" to be irreparable, *id.* at 25.  The Court

---

Plaintiffs have raised serious concerns about Defendants' actions on this issue as well, and further notes that Defendants have conceded many of these points.

[9] Plaintiffs also allege irreparable harms stemming from their alleged procedural due process injury and harm that will accrue to the Individual Plaintiffs as a result of the mandated divestment of Xiaomi shares and bar on awards of Xiaomi stock going forward.  Pls.' Mot. at 40–41.  While not seeking to minimize the impact of these alleged harms, the Court need not reach these claims at this time to determine that preliminary relief is warranted.

disagrees, and concludes that the reputational damage caused by the CCMC designation in conjunction with the very serious unrecoverable financial harm Xiaomi has already begun to experience weighs in favor of granting preliminary relief.

The Court begins with an analysis of the alleged reputational harm the CCMC designation has caused to Xiaomi.  "Injury to reputation can, at least at times, rise to the level necessary to support the issuance of an injunction." *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 280 F. Supp. 3d 59, 103 (D.D.C. 2017), *aff'd*, 928 F.3d 1102 (D.C. Cir. 2019); *Armour & Co. v. Freeman*, 304 F.2d 404, 406 (D.C. Cir. 1962) (finding irreparable harm where defendant's conduct "could not fail to damage [plaintiff's] good name"); *Patriot, Inc. v. U.S. Dept. of Hous. & Urb. Dev't*, 963 F. Supp. 1, 5 (D.D.C. 1997) (determining that "plaintiffs have demonstrated irreparable harm in damage to their business reputation" where government letter portrayed them as engaging in unsavory business practices); *Beacon Assocs., Inc. v. Apprio, Inc*., 308 F. Supp. 3d 277, 288 (D.D.C. 2018) (finding that improper contract termination for default that "left a black mark on Beacon's reputation. . . [and] will result in many lost contract opportunities" was "irreparable absent an injunction."); *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 77 (D.D.C. 2001) (loss of "customer trust and goodwill" constituted irreparable harm).  As these cases demonstrate, because "[i]njury to reputation or goodwill is not easily measurable in monetary terms" it is typically "viewed as irreparable." Wright & Miller, Federal Practice and Procedure: Civil § 2948.1.

Plaintiffs assert that Xiaomi's designation as a CCMC has "irreparably harmed Xiaomi's business reputation and goodwill."  Pls.' Reply at 19; Pls.' Mot. at 38.  It is almost unquestionable that Xiaomi's CCMC designation has damaged its reputational standing with corporate customers and business partners.  Indeed, Xiaomi has presented evidence of

complaints and concerns from corporate customers and business partners over the designation, and had to squash rumors from these same groups that a prominent U.S. technology company would cease to support their smartphones as a result.  Bin Lin Decl. ¶ 32; Bin Lin Supp. Decl. ¶ 10–11.  A review of the meaning of the CCMC label is also instructive to understand the full extent of the reputational damage it can inflict.  In then-President Trump's November 12, 2020 Executive Order, he described the threat to United States interests posed by CCMC companies:

> [CCMC] companies, though remaining ostensibly private and civilian, directly support the PRC's military, intelligence, and security apparatuses and aid in their development and modernization," which in turn, "allow[s] the PRC to directly threaten the United States homeland and United States forces overseas, *including by developing and deploying weapons of mass destruction, advanced conventional weapons, and malicious cyber-enabled actions against the United States and its people*.

E.O. 13959 (emphasis added).

Irreparable harm to a business's reputation has been found in this Circuit as a result of government action labeling a company as "enticing senior citizens into meetings, and pressuring them to obtain reverse mortgages under the guise of sound estate planning."  *Patriot, Inc.*, 963 F. Supp. at 5 (internal citations omitted).  In *Armour*, the D.C. Circuit found that the government "could not fail to damage [plaintiff's] good name" such to constitute irreparable injury when it required the plaintiff, a ham producer, to misbrand its product as "imitation ham."  *Armour*, 304 F.2d at 406.  If these types of incidents can constitute reputational harm, the Court cannot fathom how the government's labeling of Xiaomi as a company that aids in efforts to "directly threaten the United States homeland" by way of "weapons of mass destruction" and "malicious cyber-enabled actions" would not meet this standard, as the potential for long-term reputational harm is far more severe here given the gravity of what the CCMC label implies.  E.O. 13959. Accordingly, because Xiaomi has already experienced and faces the prospect of continued severe

and irreparable reputational harm due to its designation as a CCMC, preliminary relief is justified.

In response, Defendants attempt to argue that damages to a company's reputation or goodwill are fundamentally still financial injuries, and thus subject to the more restrictive standards that govern incidences of economic harm. *See* Hr'g Tr. at 30:18-23; *see Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012) (noting that "the loss of business opportunities, market share, *and customer goodwill* are typically considered to be economic harms") (emphasis added). But even if this were true— and the case law in this Circuit, as detailed above, is far from definitive on this point—the Court finds that Xiaomi can still demonstrate that it will suffer irreparable financial harms.

Admittedly, in this Circuit the general rule is that "economic loss does not, in and of itself, constitute irreparable harm." *Wis. Gas. Co.*, 758 F.2d at 674 (citations omitted). This is because economic injuries are generally reparable through monetary damages following the conclusion of litigation. *Id.* However, when a plaintiff's alleged damages are unrecoverable, such as here, due to the sovereign immunity enjoyed by Defendants, courts have recognized that unrecoverable economic loss can indeed constitute irreparable harm. *See, e.g., Sagarwala v. Cissna*, No. 18-cv-2860, 2019 WL 1649943, at *2 (D.D.C. Apr. 16, 2019); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 114 (D.D.C. 2015); *Air Trans.*, 840 F. Supp. 2d at 335 (D.D.C. 2012); *Clarke v. Off. of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 65–66 (D.D.C. 2004).

To be clear, even in this situation, damages do not become *per se* irreparable. To hold otherwise would essentially eviscerate the irreparable harm requirement for any cases brought against the government: "[a]ny movant that could show any damages against an agency with

sovereign immunity—even as little as $ 1—would satisfy the standard." *Air Trans.*, 840 F. Supp. 2d at 335.  For this reason, the Court agrees that "the wiser formula requires that the economic harm be significant, even where it is irretrievable because a defendant has sovereign immunity." *Id.*; *see also Sagarwala*, 2019 WL 1649943, at *3 (same).  The precise contours of this standard have varied somewhat based on the word choice of the district court.  But whether unrecoverable economic losses must be sufficiently "significant," *see Sagarwala*, 2019 WL 1649943, at *3, "serious," *id.,* or "severe," *Save Jobs*, 105 F. Supp. 3d at 115, to warrant emergency relief, the enormity of Xiaomi's financial losses—which Plaintiffs have substantiated with concrete evidence—meets each variation of the standard.[10]

Xiaomi has already begun to experience significant financial harm as a result of the CCMC designation.  Since the CCMC designation announcement, as of February 16, 2021, Xiaomi's stock price has dropped by 9.5%, resulting in an enormous loss of approximately $10 billion in market capitalization.  Bin Lin Decl. ¶ 30.  This loss occurred while peer companies' share prices increased.  *Id.*  Various banks including Morgan Stanley, JP Morgan Chase and Goldman Sachs have also announced that due to the CCMC designation and resulting restrictions as of March 15, 2021, they will suspend trading of all structured warrants linked to Xiaomi shares and issued by their Hong Kong affiliates.  Bin Lin Supp. Decl. ¶ 12.  These same entities

---

[10] Contrary to Defendants' assertions, there is no dispute that given the unrecoverable nature of the monetary harms suffered by Xiaomi it need not demonstrate that its economic injury is so severe it threatens Xiaomi's "very existence."  Defs.' Opp'n at 25 (citing standard for *recoverable* economic harm).  Indeed, the very cases cited by Defendants elsewhere in their opposition brief speak to this point.  *See. e.g*, *Sagarwala*, 2019 WL 1649943, at *3 (unrecoverable economic harm need only be "significant" or "serious"); *Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 171 (D.D.C. 2018) (same); *Air Trans.*, 840 F. Supp. 2d at 336 (unrecoverable financial harm must be "serious in terms of its effect on the plaintiff"); *Figg Bridge Eng'rs, Inc. v. Fed. Highway Admin.*, No. 20-cv-2188, 2020 WL 4784722, at *8 (D.D.C. Aug. 17, 2020) (same).

will also terminate and withdraw their Xiaomi Hong Kong Stock Exchange listings.  *Id.*  The

Global index publisher FTSE Russell has also decided to follow suit and remove Xiaomi

securities from its global and Chinese indexes.[11]  These actions will cause Xiaomi's stock price

and market capitalization to continue to nosedive.  *See Norlin Corp. v. Rooney, Pace, In*c., 744

F.2d 255, 267–68 (2d Cir. 1984) (affirming finding that "delisting of securities generally is a

serious loss of prestige and has a chilling effect on prospective buyers").

Xiaomi has also begun to see an exodus of lucrative contracts, with customers directly

citing the CCMC designation as the reason they are ending their current business relationships.

In late February, a key European customer rescinded a planned strategic partnership with

Xiaomi, Bin Lin Supp. Decl. ¶ 10, and two other large customers similarly conveyed that they

would have to focus on other brands due to the designation and forthcoming restrictions.  *Id.* ¶

11.  While constituting an unrecoverable financial injury on their own, these actions, in the

aggregate, will begin to impact Xiaomi's market share as its customers transition to its

competitors.  *See Bayer HealthCare, LLC v. U.S. Food & Drug Admin*., 942 F. Supp. 2d 17, 26

(D.D.C. 2013) (recognizing that "diminished market share can constitute irreparable harm.").

Moreover, all of these injuries have either already occurred or are imminent, and are thus far

from the prohibited type of "speculative" harm as Defendants try to imply.  Defs.' Opp'n at 24.

They also are of such substantial economic impact—particularly when considered in the

aggregate— to meet the requirement of "significant" economic losses.

And Xiaomi's economic losses are posed to accelerate if preliminary relief is denied and

the formal restrictions are allowed to go into effect.  The restrictions in large part prohibit

_____

[11] *See FTSE Russell to drop Xiaomi*, Reuters (Mar. 5, 2021),
https://www.reuters.com/article/us-china-xiaomi-deletion/ftse-russell-to-drop-xiaomi-luokung-from-indexes-on-u-s-order-scraps-amec-inclusion-idUSKBN2AX0XR

investment from U.S. capital markets, which Xiaomi contends will deprive it of access to capital that it needs to remain competitive through research and development and strategic acquisitions. Pls.' Mot. at 36.  Defendants attempt to argue again that these harms are only "theoretical" and unlikely to come to pass because Xiaomi "[can] obtain capital from . . . non-U.S. person investors." Defs.' Opp'n at 24.  But the capital generated by U.S. financial markets is not so easily replaceable.  For example, in 2019, U.S. capital markets provided 72% of all financing worldwide for non-financial firms.  *See* Eva Su, Cong. Rsch. Serv., RL11062, Introduction to Financial Services: Capital Markets (2021).  More specific to the case at hand, one-third of the total financing Xiaomi raised in 2020 came from U.S. capital markets—meaning that it would need to find a way to replace a total of roughly $1.5 billion in financing this year alone if the restrictions are allowed to go into effect.  Bin Lin Decl. ¶¶ 12, 26.  Furthermore, as the ongoing delisting of Xiaomi in exchanges beyond the U.S. highlights, modern capital markets are highly interconnected, and restrictions on U.S. purchasers impact the global marketplace.  Again, it has already been announced that Xiaomi will be dropped from the Hong Kong Stock Exchange by Morgan Stanley, JPMorgan Chase, and Goldman Sachs, while FTSE Russell, a subsidiary of the London Stock Exchange, has announced it will remove Xiaomi securities from its Global and China indexes, showing effects beyond U.S. borders.  Given these practical examples of the global repercussions of Xiaomi's designation, the Court finds Defendants' contention that this financial harm can be easily remediated generally unpersuasive.

Xiaomi also now faces difficulty recruiting and retaining top talent due to the restrictions—an outcome with the potential to seriously harm its business.  Since the announcement of Xiaomi's designation, two senior-level recruits declined offers to join the company as a direct result of Xiaomi's CCMC status.  Bin Lin Decl. ¶ 33.  Additionally,

Xiaomi's Senior Director of Corporate Finance and Corporate Secretary resigned, again specifically as a result of Xiaomi's CCMC status, and the impact it would have on his ability to receive stock-based compensation.  Bin Lin Suppl. Decl. ¶ 15.  This loss of talent and inability to "recruit and retain employees to build—or even maintain—[a plaintiff's] business" can constitute irreparable harm as well.  *TikTok Inc. v. Trump*, No. 20-cv-02658, 2020 WL 5763634, at *8 (D.D.C. Sept. 27, 2020); *see also Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 43 (D.D.C. 2000) (noting that Courts have found irreparable harm where the movant has shown that "economic loss would significantly damage its business above and beyond a simple diminution in profits.").

The Court concludes that Plaintiffs have met their burden by showing irreparable reputational harm and severe unrecoverable economic injuries.  Accordingly, this factor also weighs in favor of granting injunctive relief.

### C.  Balance of the Equities and Accord with Public Interest

The remaining factors in the preliminary injunction analysis—the balance of the equities and accord with public interest—also urge granting injunctive relief.  These two factors merge into a single inquiry when the government is the defendant, as is the case here.  *Nken*, 556 U.S. at 435.

The Defendants argue that the issuance of a preliminary injunction in this instance would elevate the interests of "a corporation worth nearly $100 billion or of certain investors" over "the security of the country's citizenry."  Defs.' Opp'n at 28.  This country's national security priorities are undoubtedly compelling government interests, and the executive is to be afforded deference when "sensitive and weighty interests of national security and foreign affairs" are at stake.  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–34 (2010).

However, the Court is somewhat skeptical that weighty national security interests are actually implicated here. As already detailed at length, Xiaomi's CCMC designation was based on two generally innocuous facts derived from the company's annual report. Defendants' counsel conceded at oral argument that the government could not identify *any* transfers of technology from Xiaomi to the PRC. *See* Hr'g Tr. at 41:9-15. Furthermore, the CCMC designation authority, as conferred under Section 1237, went unused for almost twenty years until a flurry of designations were made in the final days of the Trump Administration. This lack of use also undermines the notion that the CCMC designation process is critical to maintaining this nation's security. Taken together, the Court concludes that Defendants have not made the case that the national security interests at stake here are compelling.

And against this diminished national security interest, the Court must consider the "substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters v. Newby*, 838 F. 3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). This is particularly true in the APA context. *See N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("[t]he public interest is served when administrative agencies comply with their obligations under the APA.").

Given that Plaintiffs have demonstrated that they will likely prevail on their APA claims, the Court finds this "substantial public interest" to be implicated here. Furthermore, despite the Defendants' invocation of national security interests, the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)); *see also Newby*, 838 F.3d at 12 (noting that "[t]here is generally no public

interest in the perpetuation of unlawful agency action.").  In sum, both the balance of the equities and the public interest are served by granting relief in this case.

Weighing together the four relevant factors, the Court concludes that a preliminary injunction is an appropriate exercise of its discretion here.  Accordingly, the Court will preliminarily enjoin the prohibitions against Xiaomi in full.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction (ECF No. 14) is **GRANTED**, and Plaintiffs' unopposed motion for leave to file supplemental declaration (ECF No. 18) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 12, 2021                                        RUDOLPH CONTRERAS
                                                              United States District Judge